**A. L. GALLEY, Plaintiff,**

v.

**The PENNSYLVANIA RAILROAD COMPANY, Defendant.**

United States District Court
S. D. New York.
June 7, 1963.

See also 30 F.R.D. 556.

William McKelvey, New York City, for plaintiff.

Conboy, Hewitt, O'Brien & Boardman, New York City, for defendant.

James S. Rowen, New York City, of counsel.

BONSAL, District Judge.

Plaintiff is a former employee of the defendant Pennsylvania Railroad Company, who has brought an action seeking damages for his alleged wrongful discharge from the employ of the defendant. Jurisdiction is grounded on diversity of citizenship. Defendant has moved for summary judgment, F.R.Civ.P. 56, on the ground that plaintiff has failed to follow and exhaust the grievance procedure provided in the applicable Collective Bargaining Agreement (CBA).

Plaintiff was employed as a dining car waiter by the defendant Railroad and was a member of the Railroad Food Workers' Union which has a collective bargaining agreement (September 1, 1949 as amended) with the defendant, which governs the terms and conditions of the plaintiff's employment by the defendant. In the early 1950's plaintiff transferred his employment with the defendant from New York City to Washington, D. C. In early 1959, plaintiff was furloughed because of lack of work. Around the middle of July 1959, plaintiff decided that he had a better chance of obtaining work in the Dining Car Department of the defendant if he moved from Washington, D. C. back to New York. Plaintiff claims that he notified the appropriate officials of the defendant in Washington, and upon his return to New York likewise gave proper notice to the Railroad's officials here.

On November 5, 1959, in accordance with Rule 3–F–1 of the CBA, the defendant sent a letter by certified mail to the plaintiff at his Washington address recalling him from furlough and informing him that his failure to respond within 15 days would cause a termination of his seniority pursuant to Rule 3–F–1. The envelope was returned marked unclaimed. When the plaintiff failed to return to work, his seniority was terminated, effective November 21, 1959.

Plaintiff alleges that he first learned of the termination of his seniority the following month, December 1959. The plaintiff went to the offices of the defendant and inquired why his seniority had been terminated. Upon learning the reason, he caused his Union representative to appeal pursuant to the provisions of the CBA.

At this point the affidavits of the parties disagree as to whether plaintiff was appealing through his Union representative under Rule 7–A–1 of the CBA providing for appeals in the case of discharge, or Rule 7–A–2 providing for appeals where an employee believes "an injustice has been done him".

There is no dispute, however, that both Rules provide for two intermediate appeals, from which, if they result in a decision unsatisfactory to the employee, he "may appeal to the System Board of Adjustment provided for by Rule 7–A–3 of this Agreement * * *". There is likewise no dispute that after the Union's first appeal on behalf of the plaintiff was denied, a second appeal was taken pursuant to the CBA, in which a joint statement of facts was prepared setting out the plaintiff's and the Railroad's positions, and a hearing was had before the representative of the Manager of Dining Car Service, Mr. Riley, which resulted in a second denial of plaintiff's appeal. At this point, under the CBA, the next and final step would have been to take an appeal to the System Board of Adjustment under Rule 7–A–3, which consists of two representatives selected by Management and two selected by the Union. Provision is also made for a

neutral referee to be appointed to sit on the Board.

The plaintiff and his Union did not appeal to the Board; instead, this action was instituted.

In Larsen v. American Airlines, Inc., 313 F.2d 599 (2d Cir. Feb. 5, 1963) the Court affirmed the dismissal of an airline pilot's complaint for wrongful discharge on the grounds that the plaintiff failed to exhaust the remedies provided by the grievance procedure of the applicable collective bargaining agreement. Larsen's action, as the instant one, was based on diversity of citizenship. Judge Swan, speaking for the Court after citing the Federal cases under Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), stated, "Whether our decision in the instant case be based upon state law which has been so 'absorbed' under Lincoln Mills, or merely follows New York law under the familiar doctrine of Erie RR. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, the result in this case would be the same." (313 F.2d at 603.) The Court, in commenting upon the New York law imposing "on an employee an obligation to abide by remedies set out in the collective agreement once he had chosen to enforce a right allegedly arising thereunder (citing New York cases)", stated, "We think these cases reflect a sound policy, and one which should be controlling in this case". 313 F.2d at 602.

The plaintiff places great reliance on the language contained in both Rule 7–A–1 and Rule 7–A–2, stating that if an employee is dissatisfied with the decisions in his first two appeals he "may appeal to the System Board of Adjustment provided for by Rule 7–A–3 * * *." Plaintiff contends that the language "may appeal" gives the employee the option to pursue the grievance procedure further, or else go outside the agreement and sue in court. However, in Belk v. Allied Aviation Service Co. of New Jersey, 315 F.2d 513 (2d Cir. Mar. 25, 1963) the Court held that a discharged employee could not sue his employer without first seeking to obtain redress through the procedures provided in the collective bargaining agreement. The clause under construction in Belk provided:

"When a dispute or claim involving the application, construction, interpretation or performance of the rules of this agreement occurs, the parties agree that they shall endeavor in good faith, first to adjust and settle such disputes between themselves after a fair hearing. Failing such adjustment or settlement between themselves, either party *may demand arbitration* by an arbitrator designated by the Federal Mediation and Conciliation Service; the other party must agree thereto, and the decision and award of said arbitrator shall be final and binding upon the parties. The cost of any arbitration, if any, shall be borne equally by the parties hereto." (Emphasis added.) 315 F.2d at 515

With respect to this clause the Court stated, "Under the broad arbitration clause set out above, controversies concerning [seniority, vacations or overtime pay] were clearly intended to be submitted to arbitration as agreed upon in the contract". (315 F.2d at 515.) Obviously, therefore, the use of the word "may" in the contract does not excuse noncompliance with the collective bargaining agreement. "[I]f, as here, there is grievance arbitration procedure provided for, there should be recourse to it before the individual employee is permitted to bring a court action." Belk, supra 315 F.2d at 515.

In Johnson v. Kings County Lighting Co., 141 N.Y.S.2d 411, 414 (Sup.Ct. Kings Cty. 1955) the court, in holding that an employee seeking damages for alleged wrongful discharge must follow the grievance procedure of the collective bargaining agreement, stated:

"The above quoted provisions of the contract must be construed in the light of the intentions of the parties as manifested by the agreement as a whole. The dominant pur-

pose of the contracting parties was to avoid, if possible, industrial strife by requiring that disputes arising out of working conditions and the construction to be placed upon the terms of the contract be resolved by means of the grievance procedure set forth in the contract and by arbitration. Since plaintiff is relying upon the terms of the contract for the relief he seeks in this action, he may not invoke part of the contract and disregard its other provisions requiring arbitration." 141 N.Y.S. 2d at 414

The employment relationship of the plaintiff here to the defendant is governed by the CBA. Plaintiff having resorted to its arbitration procedures, may not abandon them in midstream and turn to a court action.

Defendant's motion for summary judgment is granted.

Settle order on notice.