455 F.2d 277
 79 L.R.R.M. (BNA) 2698, 67 Lab.Cas. P 12,429
 David C. BUNDY and James E. Feldscher, Plaintiffs-Appellants,
v.
PENN CENTRAL COMPANY and Brotherhood of Railway, Airline and
Steamship Clerks, Freight Handlers, Express and
Station Employes, Defendants-Appellees.
Robert B. WATJEN et al., Plaintiffs-Appellants,
v.
PENN CENTRAL COMPANY and Brotherhood of Railway, Airline and
Steamship Clerks, Freight Handlers, Express and
Station Employes, Defendants-Appellees.
 Nos. 71-1319, 71-1322.
 United States Court of Appeals,
Sixth Circuit.
 Feb. 11, 1972.
 
 Bernard S. Goldfarb, Cleveland, Ohio, on brief, for plaintiffs-appellants.
 James L. Highsaw, Jr., Washington, D. C., for defendants-appellees; John F. Dolan, Cleveland, Ohio, on brief for Trustees of The Penn Central Transp. Co., Harold A. Ross, Cleveland, Ohio, on brief for Brotherhood of Railway, Airline and Steamship Clerks, etc.
 Before WEICK, McCREE and KENT, Circuit Judges.
 WEICK, Circuit Judge.
 
 
 1
 These appeals are from orders of the District Court granting motions of the defendants for summary judgment. They were consolidated for briefing and oral argument.
 
 
 2
 The controversy between the parties arose out of the merger of New York Central Railroad Company with Pennsylvania Railroad Company to form Penn Central Transportation Company[1], which merger was approved by the Interstate Commerce Commission on April 6, 1966, and became effective February 1, 1968.
 
 
 3
 The six plaintiffs in the two appeals were all employees of New York Central, engaged in rate revision work. They claimed that they were adversely affected by the merger and the transfer of their jobs to other locations. They instituted an action for damages in the District Court against Penn Central and the labor union (BRAC) of which they were members, alleging that the railroad conspired with the union in entering into an agreement on October 18, 1966, implementing a previous agreement dated May 20, 1964, which implementing agreement was not fair and equitable and that it operated to place them in a position worse than their previous employment, all in violation of the order of ICC and Section 5(2) (f) of the Interstate Commerce Act (49 U.S.C. Sec. 5(2) (f)); and that BRAC violated its duty to fairly represent them, by not processing their grievances.
 
 
 4
 Motions for summary judgment were filed by the plaintiffs and the defendants, which motions were submitted to the District Court on affidavits. The District Court filed a Memorandum Opinion in each case on March 4, 1971, in which it granted the motion of the defendants for summary judgment as to each plaintiff except the claim of plaintiff Robert B. Watjen, for unfair representation, which claim was reserved for trial on its merits. Watjen's appeal and that of his three co-plaintiffs were docketed in this Court as No. 71-1322.
 
 
 5
 In view of the fact that Watjen's complaint for unfair representation is still pending in the District Court, it is clear that no final order has been entered by the District Court in appeal number 71-1322, and therefore it will be dismissed for lack of jurisdiction. Rule 54(b), Fed.R.Civ.P.
 
 
 6
 * CONSPIRACY
 
 
 7
 In appeal number 71-1319 involving plaintiffs Bundy and Feldscher, we have jurisdiction and we will first consider the questions raised pertaining to the alleged conspiracy.
 
 
 8
 In our opinion, there was no evidence to prove that BRAC conspired with Penn Central. The mere fact that the railroad entered into an implementing agreement with the union is not proof of any conspiracy. The agreement entered into on May 20, 1964 prior to the merger, which agreement was approved by the ICC, provided that the parties would enter into an implementing agreement. To comply with an order of the ICC would hardly constitute a conspiracy.
 
 II
 UNFAIR REPRESENTATION
 
 9
 The District Court found that appellant Bundy never presented any grievance to the union, nor to any of its representatives.
 
 
 10
 With respect to appellant Feldscher, the Court was of the view that it was questionable whether he had ever filed a grievance, but assuming that he had, the union did not prosecute his grievance because it felt his grievance was without merit.
 
 
 11
 A labor union may not be held liable for failure to prosecute a grievance "absent a showing of fraud, misrepresentation, bad faith, dishonesty of purpose or such gross mistake or inaction as to imply bad faith." Balowski v. International Union, etc., 372 F.2d 829, 834 (6th Cir. 1967).
 
 
 12
 The District Court held that the union acted in good faith. We agree.
 
 III
 WRONGFUL DISCHARGE
 
 13
 The District Court denied the claim for wrongful discharge because (1) plaintiffs had not exhausted their administrative remedies, and (2) the laws of Ohio and of New York require such prior exhaustion. Belanger v. New York Cent. R. R., 384 F.2d 35, 36 (6th Cir. 1967); Pacilio v. Pennsylvania R. R., 381 F.2d 570 (2d Cir. 1967); Ladd v. New York Cent. R. R., 170 Ohio St. 491, 166 N.E.2d 231 (1960). In our opinion this ruling was correct.
 
 
 14
 There was also a lack of diversity jurisdiction, since some of the members of BRAC resided in Ohio. Sweeney v. Hiltebrant, 373 F.2d 491 (6th Cir. 1967).
 
 IV
 
 15
 There remains for consideration the question of whether plaintiffs can maintain their action for violation of Section 5(2) (f) of the Interstate Commerce Act and the Order of ICC.
 
 
 16
 The District Court held that plaintiffs could not maintain their action because they had not exhausted their remedies before the Railroad Adjustment Board. The Court relied on O'Mara v. Erie Lackawanna R. R., 407 F.2d 674 (2d Cir. 1969).
 
 
 17
 It is unfortunate that the District Court did not have before it our decision in Nemitz v. Norfolk & Western R. R., 436 F.2d 841 (6th Cir., decided Jan. 15, 1971, and affirmed by the Supreme Court Nov. 15, 1971 in Norfolk & Western R. R. v. Nemitz, 404 U.S. 37, 92 S.Ct. 185, 30 L.Ed.2d 198). Nemitz was apparently not cited to it.
 
 
 18
 In Nemitz, one of the questions raised by the Railroad in the appeal was that Nemitz had not exhausted his remedies before the Railroad Adjustment Board. In holding that the Railway Labor Act was inapplicable, this Court said:
 
 
 19
 "In deciding the jurisdictional issues thus presented, the Court must dispose of a preliminary question: whether the Railway Labor Act, 45 U.S.C. Sec. 153 et seq., is applicable, even it if be assured that the rights here asserted by the appellees stem from an I.C.C. order. If the Railway Labor Act applies, jurisdiction does not lie. Brotherhood of Local Engineers v. Chicago & Northwestern Ry. Co., 314 F.2d 424 (8th Cir.), cert. denied, 375 U.S. 819, 84 S.Ct. 55, 11 L.Ed.2d 53 (1968).
 
 
 20
 "Section 5(11) of 49 U.S.C. provides in part, that 'the authority conferred by this section shall be exclusive and plenary.' (Emphasis added.) Various cases dealing with consolidations pursuant to 49 U.S.C. Sec. 5 justify our emphasizing the words 'exclusive' and 'plenary.' Brotherhood of Loc. Eng. v. Chicago & Northwestern Ry. Co., supra; Brotherhood of Maintenance of Way Employees v. United States, 366 U.S. 169, 81 S.Ct. 913, 6 L.Ed.2d 206 (1961); Railway Labor Executives' Association v. United States, 339 U.S. 142, 70 S.Ct. 530, 94 L.Ed. 721 (1950); United States v. Lowden, 308 U.S. 225, 60 S.Ct. 248, 84 L.Ed. 208 (1939). These cases dealt with the propriety of granting exclusive authority to the Interstate Commerce Commission in consolidations pursuant to 49 U.S.C. Sec. 5, and with the intent of Congress as evidenced by the defeat of the Harrington Amendment. The cumulative effect of the decisions is that there must be exclusive and plenary authority in the I.C.C. to achieve the purposes of the Act. The authority vested in the I.C.C. to effectuate proposed mergers would be rendered ineffective if authority to adjust work realignments through fair compensation did not exist. Since, under the Railway Labor Act, employees cannot be compelled to accept or arbitrate new working rules or conditions, the application of the Railway Labor Act to situations such as that presented here, like the Harrington Amendment, would threaten to prevent many consolidations, and, therefore, should not be applied. Brotherhood of Loc. Eng. v. Chicago & Northwestern Ry. Co., supra." (Id. at 845)
 
 
 21
 The Supreme Court in affirming our decision did not even discuss the exhaustion issue, nor is it mentioned in the dissenting opinion.
 
 
 22
 Because the District Court decided this case on the exhaustion issue, it never reached the merits of the case. We are urged to decide the case on the record before us. We decline to do so.
 
 
 23
 Penn Central contends that the implementing agreement which was authorized by the 1964 agreement did not take away any rights which the employees otherwise had, but gave them an option for added rights, namely, guaranteed employment for life in the absence of dismissal for cause, and further contends that they voluntarily exercised their option to become utility employees instead of bidding for jobs on the Detroit roster, on which they had seniority rights.
 
 
 24
 On the other hand, the employees contend that the implementing agreement is unlawful because it provides for a classification of "utility employee" which they describe as a "garbage can" for the disposition of employees. They further contend that their rights given under the implementing agreement were illusory and that in some instances the railroad frustrated the exercise of them; and that they were placed in a worse position with respect to their employment by the implementing agreement, in violation of the statute and the ICC order.
 
 
 25
 These issues must first be determined at the trial level.
 
 
 26
 On the remand, the District Court should conduct an evidentiary hearing and consider the issues with respect to each plaintiff in light of the decisions of this Court and of the Supreme Court in Nemitz. Since no final order has been entered in appeal number 71-1322, the District Court has jurisdiction to modify its order as it may determine.
 
 
 27
 The appeal in No. 71-1322 is dismissed for lack of jurisdiction. In appeal No. 71-1319 the judgment of the District Court is affirmed with respect to the issues of conspiracy, wrongful discharge, and unfair representation, and is remanded for trial on the issues pertaining to the alleged violation of Section 5(2) (f) and the order of ICC.
 
 
 
 [1]
 Penn Central is currently involved in reorganization proceedings pending in the United States District Court for the Eastern District of Pennsylvania, under the title of "In the Matter of Penn Central Transportation Company, Debtor, No. 70-347."